LISA KOBIALKA (State Bar No. 191404)
CHRISTINA M. FINN (State Bar No. 247838)
HERBERT SMITH FREEHILLS KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: lisa.kobialka@hsfkramer.com
Email: christina.finn@hsfkramer.com

AARON M. FRANKEL (*pro hac vice* to be filed)
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: aaron.frankel@hsfkramer.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| SPRINTRAY, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHINING 3D TECH CO. LTD., and SHINING 3D TECHNOLOGY, INC., <br><br> Defendants. | Case No. 4:26-cv-06026 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SprintRay, Inc. ("SprintRay") files this Complaint for Patent Infringement and Demand for Jury Trial against Shining 3D Tech Co. Ltd. and Shining 3D Technology, Inc. (collectively, "Defendants" or "Shining 3D") and alleges as follows:

SprintRay developed and patented novel technology for advanced, high-quality 3D printing. The United States Patent and Trademark Office ("USPTO") issued U.S. Patent Nos. 10,894,355, 11,633,910, 11,679,555, 12,576,588; and 12,583,180.  Exs. 1-5 (the "Asserted Patents").  SprintRay filed this suit to protect its valuable intellectual property from Shining 3D's ongoing infringement.

## THE PARTIES

1.    SprintRay is a California corporation with its principal place of business at 2710 Media Center Drive, Suite 100A, Los Angeles, CA 90065.  SprintRay was founded in 2014.  SprintRay builds and supplies end-to-end 3D printing products and ecosystems, including to dental professionals, using technologies that are both cutting-edge and user-friendly.  SprintRay offers a range of 3D printing solutions, including its SprintRay Pro 55S, Pro 95S, Pro 2, and Midas 3D printers.

2.    Shining 3D Tech Co., Ltd. is a corporation organized and existing under the laws of China, with its principal place of business at No. 1398, Xiangbin Road, Wenyan, Xiaoshan, Hangzhou, Zhejiang, China, 311258.  Shining 3D Tech Co., Ltd. designs and manufactures stereolithography ("SLA") and digital light processing ("DLP") 3D printers, related hardware components, materials, and software.  Shining 3D Tech Co., Ltd. markets and offers these products for sale in the United States through its website and through authorized resellers and distributors and introduces these products into the stream of commerce with the knowledge and expectation that they will be sold in this District and throughout the United States.

3.    Shining 3D Technology, Inc. is a corporation organized and existing under the laws of California, with its principal place of business at 2450 Alvarado St., Bldg 7, San Leandro, California 94577.  Upon information and belief, Shining 3D Technology, Inc. imports, distributes, markets, and sells Shining 3D Technology, Inc.'s printers and related products throughout the United States, introducing them into the stream of commerce knowing that they would be sold in this District and elsewhere in the United States.

1

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

4. On information and belief, Defendants Shining 3D Tech Co. Ltd and Shining 3D Technology, Inc. are related entities that work in concert to design, manufacture, import, distribute, offer for sale, and sell the infringing products.

### JURISDICTION AND VENUE

5. Jurisdiction and venue for this action are proper in this District.

6. This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* This Court has original subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because this is a civil action arising under the Patent Act.

7. This Court has personal jurisdiction over Shining 3D Technology, Inc. because it is incorporated within this District.

8. Shining 3D Tech Co., Ltd. is subject to this Court's personal jurisdiction consistent with the principles of due process and the California Long-Arm Statute, including for the reasons set forth below. Cal. Code Civ. Proc. § 410.10.

9. This Court further has personal jurisdiction over Defendants because Defendants regularly and continuously, either directly or through subsidiaries or intermediaries, conduct business in this District and have infringed, and continue to do so, in this District. In addition, the Court has personal jurisdiction over Defendants because they have established minimum contacts with this District and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. For example, Defendants maintain a United States office in San Leandro, California and market and sell products alleged to be infringing in this Complaint throughout the United States, including in this District, through their website and network of authorized resellers and distributors. On information and belief, Defendants have derived substantial revenues from their infringing acts occurring in this District and throughout the United States.

10. Venue is proper as to Shining 3D Technology, Inc., pursuant to 28 U.S.C. § 1400(b), because it resides in this District.

11. Venue is proper as to Shining 3D Tech Co., Ltd., a Chinese corporation, because suits against foreign entities are proper in any judicial district under 28 U.S.C. § 1391(c)(3).

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

**SPRINTRAY'S ASSERTED PATENTS**

12.     The USPTO issued U.S. Patent No. 10,894,355 (the "'355 Patent"), entitled "Resin Solidification Substrate and Assembly," on January 19, 2021.  The '355 Patent lists Ali El-Siblani and Alexandr Shkolnik as its inventors.  Attached hereto as Exhibit 1 is a true and correct copy of the '355 Patent.

13.     All rights, title, and interest in the '355 Patent have been assigned to SprintRay, which is the sole owner of the '355 Patent.

14.     The '355 Patent claims a solidification substrate assembly used in additive manufacturing, comprising concrete physical components such as a solidification substrate, a rigid or semi-rigid support layer, a film layer positioned adjacent to that rigid layer, as well as peeling members to reduce separation forces.  It solves a specific technological problem in 3D resin printing: the difficulty of reliably separating a newly solidified layer from the underlying substrate without introducing print failures, damage, or excessive peel forces.  This specific solution addresses a technological problem with a technological solution and is not based on technology that was conventional, routine, or well known at the time of the invention.

15.     The USPTO issued U.S. Patent No. 11,633,910 (the "'910 Patent"), entitled "Resin Solidification Substrate and Assembly," on April 25, 2023.  The '910 Patent lists Ali El-Siblani and Alexandr Shkolnik as its inventors.  Attached hereto as Exhibit 2 is a true and correct copy of the '910 Patent.

16.     All rights, title, and interest in the '910 Patent have been assigned to SprintRay, which is the sole owner of the '910 Patent.

17.     The '910 Patent claims multi-layered substrate systems used in additive manufacturing systems, particularly stereolithography based printers.  The claimed assemblies include a multi-layer system comprising a film layer and rigid or semi-rigid solidification substrate in non-adhesive contact with each other, as well as separation-facilitating features that mitigate adhesion forces during the printing process such as peeling members.  The patent addresses a specific technological problem in 3D printing, namely improving the separation of newly-formed layers of the 3D printed object from the solidification substrate without damaging the newly-printed 3D object or interfering with the

3

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

printing process.  This specific solution addresses a technological problem with a technological solution and is not based on technology that was conventional, routine, or well known at the time of the invention.

18.    The USPTO issued U.S. Patent No. 11,679,555 (the "'555 Patent"), entitled "Reservoir with Substrate and Assembly for Reducing Separation Forces in Three-Dimensional Printing," on June 20, 2023.  The '555 Patent lists Amir Mansouri, Huijian Tian, Hossein Bassir, Jing Zhang, and Shukun Ye as its inventors.  Attached hereto as Exhibit 3 is a true and correct copy of the '555 Patent.

19.    All rights, title, and interest in the '555 Patent have been assigned to SprintRay, which is the sole owner of the '555 Patent.

20.    The '555 Patent claims specific, concrete improvements to three-dimensional printing.  Specifically, it claims structures for use with a reservoir assembly, including a transparent or semi-transparent rigid substrate, and a permeable substrate disposed between them.  The permeable substrate and the structural arrangement of these multiple layers reduce separation forces experienced during bottom-up additive manufacturing, thereby increasing print reliability.  This specific solution addresses a technological problem with a technological solution and is not based on technology that was conventional, routine, or well known at the time of the invention.

21.    The USPTO issued U.S. Patent No. 12,576,588 (the "'588 Patent"), entitled "Reservoir with Substrate Assembly for Reducing Separation Forces in Three-Dimensional Printing," on March 17, 2026.  The '588 Patent lists Amir Mansouri, Huijian Tian, Hossein Bassir, Jing Zhang, and Shukun Ye as its inventors.  Attached hereto as Exhibit 4 is a true and correct copy of the '588 Patent.

22.    All rights, title, and interest in the '588 Patent have been assigned to SprintRay, which is the sole owner of the '588 Patent.

23.    The '588 Patent claims reservoir assemblies used in additive manufacturing systems, particularly stereolithography, that employ multi-layer structures.  These assemblies include a film configured to retain photosensitive material, along with one or more layers positioned below the film, such as permeable substrates or rigid transparent layers.  The claimed configurations reduce separation forces between cured material and the reservoir during printing, thereby improving print reliability, accuracy, and cycle time.  The patent addresses the technological problem of suction forces

4

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

encountered during layer separation by proposing specific structural reservoir designs and material arrangements. This specific solution addresses a technological problem with a technological solution and is not based on technology that was conventional, routine, or well known at the time of the invention.

24. The USPTO issued U.S. Patent No. 12,583,180 (the "'180 Patent"), entitled "Reservoir Assembly for Enhancing a Surface Finish of a 3D-Printed Object," on March 24, 2026. The '180 Patent lists Amir Mansouri, Huijian Tian, Hossein Bassir, Jing Zhang, and Shukun Ye as its inventors. Attached hereto as Exhibit 5 is a true and correct copy of the '180 Patent.

25. All rights, title, and interest in the '180 Patent have been assigned to SprintRay, which is the sole owner of the '180 Patent.

26. The '180 Patent claims reservoir and substrate assemblies used in additive manufacturing systems, particularly stereolithography-based printers. The claimed assemblies include layered structures comprising a film for retaining photosensitive material and a semi-transparent substrate positioned within the assembly. These configurations are designed to diffuse projected light during printing in order to reduce pixelation and aliasing artifacts and thereby enhance the surface finish of three-dimensional printed objects. The patent addresses a specific technological problem in 3D printing, namely achieving smoother and higher-quality surface finishes, by introducing particular layered substrate arrangements within the reservoir assembly to reduce pixelation. This specific solution addresses a technological problem with a technological solution and is not based on technology that was conventional, routine, or well known at the time of the invention.

27. SprintRay complies with the marking statute (35 U.S.C. § 287). It marks its patent-practicing 3D printers with a link to its website that provides a list of the patents that each printer practices. Exhibit 6 (https://sprintray.com/patents/).

### SHINING 3D'S INFRINGING PRODUCTS

28. Shining 3D makes, uses, offers for sale, sells, and imports products that infringe one or more claims of the Asserted Patents.

29. For example, Shining 3D's AccuFab-F1 3D Printer ("F1") infringes the Asserted Patents as set forth below. Shining 3D launched the F1 commercially in 2025 and has marketed and

5

sold it in the United States since that time.  Exhibit 7 (https://www.linkedin.com/posts/f1-cg-cover-share-7313916411918053378-O_C_/).

30.    Shining 3D describes the F1 as a high-speed, high-precision DLP 3D printer with high-resolution imaging and production-oriented features designed for dental applications.  Exhibit 8 (https://www.shining3ddental.com/solution/accufab-f1/).

31.    The F1 is a resin-based additive manufacturing system that builds 3D objects from photopolymer resin through stereolithographic layer-by-layer curing.  The system includes (i) a DLP light engine positioned beneath a transparent material film and glass substrate, (ii) a resin tray assembly configured to hold liquid photopolymer, (iii) a vertically removable build platform positioned above the resin tray, and (iv) electronic control systems for image projection, motion control, and positioning of the build platform.

## AccuFab F1 Specs

| Printer Type | DLP Printer | Printer Size | 330 x 350 x 575 mm |
|---|---|---|---|
| Printer Weight | 23kg | Print Volume (x/y/z) | 144 x 81 x 75 mm |
| Resolution | 1920 x 1080 | Print Speed | Max 150 mm/h (depend on different material and layer) |
| Layer Thickness | 50 µm~100 µm (adjustable) | Accuracy | ± 25 µm |
| Connectivity | USB / Wi-Fi / Ethernet | | |

Exhibit 8 (https://www.shining3ddental.com/solution/accufab-f1/) at 6 (showing how the F1 uses layer-by-layer curing, with the "Layer Thickness" being adjustable, affecting print speed).

6

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

## The AccuFab F1: Why DLP Still Matters

Here's where Shining 3D surprised me again. While the entire industry is shifting to LCD printers, they released a new DLP printer - the AccuFab F1.



The reason for DLP rather than LCD? - "The quick answer is accuracy, that's what it came down to," Jorge explained. At $10,000 USD, it's actually competitive for a DLP printer that can achieve 25-micron accuracy and print crowns in 10-11 minutes.

*See* Exhibit11 at 1 (https://instituteofdigitaldentistry.com/podcast/s03-e09-shining-3d-has-done-the-impossible-from-bad-to-market-leader-in-5-years/) (showing that the F1 is a DLP printer).



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**

7

COMPLAINT FOR PATENT                                     CASE NO.: _____
INFRINGEMENT

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8 (showing the resin tray assembly configured to hold liquid photopolymer and a vertically removable build platform positioned above the resin tray).



## AccuFab-F1 | High-Performance Dental 3D Printing Redefined



SHINING3D Dental
9.4K subscribers

Subscribe    👍 38    👎    ➤ Share

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8 (showing how the DLP light engine, a projection system, is positioned below the entire substrate assembly, including the transparent material film and glass substrate, as well as the electronic controls for image projection, motion control, and build tray positioning).

32.    In addition, Shining 3D's AccuFab-CEL 3D Printer ("CEL") infringes the Asserted Patents as further set forth below.  Shining 3D launched the CEL commercially at LabDay 2024 in February 2024 and has marketed and sold it in the United States since that time.  Exhibit 12 (https://shining3d.idealdent.net/news-post/shining-3d-introduces-accufab-cel-advancing-dental-3d-printing-at-labday-2024/) at 1-2.

8

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

33.     Shining 3D describes the CEL as a high-speed, high-precision, high-accuracy LCD 3D printer with high-resolution imaging and production-oriented features designed for dental applications. Exhibit 10 (CEL User Manual) at 6.

34.     The CEL is a resin-based additive manufacturing system that builds 3D objects from photopolymer resin through stereolithographic layer-by-layer curing.  The system includes, among other things, (i) a chip-on-board (COB) UV-LED light engine and LCD screen light system positioned beneath a transparent material film and glass substrate, (ii) a resin tray assembly configured to hold liquid photopolymer, (iii) a vertically removable build platform positioned above the resin tray, and (iv) electronic control systems for image projection, motion control, and positioning of the build platform.

## 5.2 Optics Parameters

| Parameter | Description |
|---|---|
| Optical Engine | black-and-white LCD screen (9.25-inch 6K screen) |
| Resolution | 5760 px × 3600 px |
| Pixel Size | 0.035 mm |
| Light Source | 400 nm ~ 405 nm COB |
| Light Intensity | up to 8 mw/cm² |

## 7.2 Notice for Material

**Ultraviolet Light**

When curing resin or printing, the UV light source under the LCD screen projects 405 nm UV-LED light.

⚠ **Warning**

The UV Light is harmful to the eyes, so please avoid direct eye contact.

9

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

Exhibit 10 (CEL User Manual) at 13, 16 (showing that the CEL uses a COB 400-405 nm UV-LED positioned under an LCD screen enabling 6K resolution).



@InstituteofDigitalDentistry   Subscribe

**Accufab Cel**

*See* https://www.youtube.com/shorts/0fkSqgVmHIQ (showing the resin tray assembly configured to hold liquid photopolymer and a vertically removable build platform positioned above the resin tray).

10

COMPLAINT FOR PATENT INFRINGEMENT                                              CASE NO.: _____

## AccuFab CEL Specs

| | | | |
|---|---|---|---|
| Resolution | 5760 x 3600 | Print Volume (W x D x H) | 70 x 70 x 180 mm / 192 x 120 x 180 mm |
| Print Speed | Max 100 mm/h (depends on layer thickness and materials) | Accuracy* | ± 35 µm |
| Layer Thickness | 50 µm~100 µm (Adjustable) | Printer Size | 360*360*530 mm |
| Printer Weight | 22 kg | Connectivity | USB, Wi-Fi, Ethernet |

Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 6 (showing how the CEL uses layer-by-layer curing, with the "Layer Thickness" being adjustable, affecting print speed).



Exhibit 10 (CEL User Manual) at 19 (showing the light system positioned below the entire substrate assembly, including the transparent material film and glass substrate, as well as the electronic controls for image projection, motion control, and build tray positioning).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.: _____

35.     In addition to the F1 and CEL, Shining 3D sells and distributes related components and accessories, including resin tank assemblies, such as Shining 3D's HyperClear and Standard resin tanks.  These components form part of the assemblies and systems claimed in the Asserted Patents.

| Resin tank version | FDAC1  (Hyper Clear) |
|---|---|
| For printer | Accufab-F1 |
| Volume of resin | Min:300ml<br>Max:600ml |
| Dimension | 314*194*40mm |
| Package size | 375*245*70 |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture |  |

Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's HyperClear (FDAC1 HyperClear) resin tank, which is compatible with the F1).

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

| Resin tank version | FDAC1 |
|---|---|
| For printer | Accufab-F1 |
| Volume of resin | Min:300ml<br>Max:600ml |
| Dimension | 314*194*40mm |
| Package size | 375*245*70 |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture | |

Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1 (showing Shining 3D's Standard (FDAC1) resin tank for the F1).

13

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



Exhibit 8 (https://www.shining3ddental.com/solution/accufab-f1/) at 6 (showing that "the F1 supports a Hyper Clear resin tank").





14

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

## Frequently Asked Questions

| | |
|---|---|
| **Does the 3D printer come with a heated build platform?** + | **Does the AccuFab CEL have a Hyper Clear resin tank?** —<br><br>Yes, the CEL supports a Hyper Clear resin tank. |
| **Can the AccuFab CEL build platform be used interchangeably with AccuFab L4D/L4K?** + | **Does the resin tank have NFC?** + |

*See* https://www.youtube.com/watch?v=RCo92R9M7w4 (showing that the HyperClear resin tank is compatible and recommended for use with the CEL); *see also* Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

15

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

# Resin Tank Versions For AccuFab-CEL

**Ruby Yan**
Modified on: Tue, 20 May, 2025 at 5:21 PM

| Resin tank version | LAC1 |
|---|---|
| For printer | C |
| Volume of resin | Min: 625 ml<br>Max: 1100ml |
| Dimension | 315*205*40mm |
| Package size | 360*250*70 |
| Net weight | 820g |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture | |

16

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



Film Changing for Standard Resin Tank For AccuFab-CEL

SHINING3D Dental
9.45K subscribers    Subscribe        👍 4  👎    ↗ Share    🔖 Save    ⬇ Download    •••

*See* Exhibit 14 (https://support.shining3ddental.com/en/support/solutions/articles/60001525664-resin-tank-versions-for-accufab-cel) at 1 (showing Shining 3D's Standard (LAC1) resin tank for the F1); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank).

36.    The F1 and CEL are always sold with at least their Standard tanks because there is no option to buy an F1 or CEL without at least the Standard tank.

17

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



**AccuFab-F1 Unboxing | Discover What's Inside!**

 SHINING3D Dental  Subscribe
9.47K subscribers

*See* https://www.youtube.com/watch?v=yWCsfo1yyS0 (showing an unboxing of the F1 and that the F1 is sold with a Standard (FDAC1) resin tray).



**AccuFab-CEL Unboxing, Setup, and AccuWare Connection**

18

COMPLAINT FOR PATENT                                              CASE NO.: _____
INFRINGEMENT

*See* https://www.youtube.com/watch?v=T-6fhJG4MRI&t=5s (showing an unboxing of the CEL and that the CEL is sold with a Standard (LAC1) resin tank).

37.    Further, the F1 and CEL are inoperable without the HyperClear or Standard resin tanks, as the resin tanks are what hold the liquid photopolymer for printing, and the F1 and CEL are not designed to operate with third-party tanks.

19

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

**SHINING 3D DENTAL**     Dental Support          Community     Submit

# Resin Tank Versions For AccuFab-CEL

**Ruby Yan**
Modified on: Tue, 20 May, 2025 at 5:21 PM

| Resin tank version | LAC1 |
|---|---|
| For printer | C |
| Volume of resin | Min: 625 ml<br>Max: 1100ml |
| Dimension | 315*205*40mm |
| Package size | 360*250*70 |
| Net weight | 820g |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture | |

| Resin tank version | LAC2 |
|---|---|
| For printer | For printer |
| Volume of resin | Min: 200 ml<br>Max: 350ml |
| NFC Function | No |
| Film replacement kit | Yes |
| Picture | |

20

COMPLAINT FOR PATENT                                CASE NO.: _____
INFRINGEMENT

## Frequently Asked Questions

**Does the 3D printer come with a heated build platform?**    +

**Does the AccuFab CEL have a Hyper Clear resin tank?**    —

Yes, the CEL supports a Hyper Clear resin tank.

**Can the AccuFab CEL build platform be used interchangeably with AccuFab L4D/L4K?**    +

**Does the resin tank have NFC?**    +

Exhibit 14 (https://support.shining3ddental.com/en/support/solutions/articles/60001525664-resin-tank-versions-for-accufab-cel) at 1-2 (showing a Shining 3D support page indicating the resin tank versions for the CEL, including only official Shining 3D resin tanks:  the Standard (LAC1) resin tank and optional LAC2 for small printing); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that the CEL is also compatible with the official Shining 3D HyperClear resin tank).

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____

SHINING 3D DENTAL    Dental Support                Community    Submit

Dental Support › Solution home › AccuFab-F1 › Setting up the AccuFab-F1

# Resin Tank Versions For AccuFab-F1

**Ruby Yan**
Modified on: Wed, 5 Nov, 2025 at 2:08 PM

| | |
|---|---|
| Resin tank version | FDAC1 |
| For printer | Accufab-F1 |
| Volume of resin | Min:300ml Max:600ml |
| Dimension | 314*194*40mm |
| Package size | 375*245*70 |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture | |

**Note:** The difference between the two resin tank is the type of film used.

| | |
|---|---|
| Resin tank version | FDAC1 (Hyper Clear) |
| For printer | Accufab-F1 |
| Volume of resin | Min:300ml Max:600ml |
| Dimension | 314*194*40mm |
| Package size | 375*245*70 |
| Total weight | - |
| NFC Function | Yes |
| Film replacement kit | Yes |
| Picture | |

22

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.: _____

Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing a Shining 3D support page indicating the resin tank versions for the F1, including only official Shining 3D resin tanks: the Standard (FDAC1) resin tank and HyperClear (FDAC1 Hyper Clear) resin tank).

38.    Accordingly, as used herein, the "Accused Products" refers collectively to the F1 and CEL printers together with their associated resin tank assemblies, including the HyperClear and Standard resin tanks, and any related components and accessories, treated as a single product for purposes of this Complaint.

39.    Shining 3D markets and offers the Accused Products for sale in the United States through its website, which directs customers to obtain a quote for the Accused Products, and through its U.S. sales and distribution channels. Exhibit 8 ("Get a quote") (https://www.shining3ddental.com/solution/accufab-f1/) at 1; Exhibit 9 ("Get a quote") (https://www.shining3ddental.com/solution/accufab-cel) at 1; Exhibit 15 ("Become a Reseller") (https://www.shining3d.com/become-a-reseller) at 1; *see also* Exhibit 16 (https://www.itxpros.com/shining3d) at 1 ("ITXPROS and Shining 3D are proud to announce their latest collaboration to distributed Digital Dentistry solutions in USA.").

40.    Upon information and belief, Shining 3D has sold and shipped the Accused Products and related components to customers in this District and throughout the United States since at least February 2024.

41.    On information and belief, Shining 3D has known of the Asserted Patents and of its infringement thereof from SprintRay's patent marking and from its monitoring of SprintRay and SprintRay's products. Shining 3D, at the very least, has become aware of the Asserted Patents and of its infringement thereof as of the date of the filing of this Complaint.

## COUNT I
### (Direct Infringement of the '355 Patent)

42.    SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

23

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

43.    Shining 3D has infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '355 Patent in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, selling, and importing into the United States the Accused Products without permission, consent, authorization, or license from SprintRay.

44.    By way of example, the Accused Products meet each and every limitation of at least Claim 1 of the '355 Patent.  Claim 1 recites the following limitations:

A multi-layer assembly for making a three-dimensional object by solidifying a solidifiable material, comprising:

a rigid or semi-rigid solidification substrate assembly comprising a frame and a rigid or semi-rigid translucent solidification substrate disposed in the frame;

a film assembly, wherein the rigid or semi-rigid solidification substrate assembly is connected to the film assembly, and the film assembly includes at least one frame and a film disposed in the at least one frame.

45.    The Accused Products include the F1 and CEL with HyperClear or Standard resin trays, which together comprise a multi-layer assembly for making a 3D object by solidifying a solidifiable material, including resin, as claimed in the '355 Patent.  The Accused Products include a rigid or semi-rigid solidification substrate assembly comprising a support frame mounted to the base of the printer, on which a rigid or semi-rigid translucent substrate (i.e., a glass plate) is positioned and secured.

24

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**



**Platform Levelling for AccuFab-CEL**

25

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8, https://www.youtube.com/watch?v=lxYOzkUHPQY (showing the Accused Products' support frame on which the glass plate, the rigid or semi-rigid translucent substrate, is positioned and secured).

46.    The Accused Products further include a resin tank comprising a film assembly that is mounted to the support frame and disposed above the substrate.  The film assembly includes a frame and at least one film disposed within the frame, including a permeable release film.  The film is secured within the frame and is tensioned across the bottom of the resin tank.



Film Changing for Standard Resin Tank For AccuFab-CEL



AccuFab-F1 | High-Performance Dental 3D Printing Redefined

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=o1huQoPjg1w, https://www.youtube.com/watch?v=9Id-5AMVhG8 (showing how, in the case of the Standard resin tanks, the film assembly includes at least one frame and a film, the permeable release film, disposed in the frame).



*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (showing the HyperClear resin tank which is the film assembly including a frame and a permeable release film tensioned across the bottom of the resin tank).

47.    In the Accused Products, the film assembly is connected to the substrate assembly through the support frame such that the tensioned films are positioned above the substrate and form a solidification interface for the resin during printing.

COMPLAINT FOR PATENT                    CASE NO.: _____
INFRINGEMENT



COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**

SHINING3D Dental
9.4K subscribers    Subscribe                    👍 38    👎    ↗ Share    🔖 Save    ⋯



Film assembly

Substrate assembly

**The AccuFab-CEL Dental 3D Printer: Higher, Faster, Easier**

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



The AccuFab-CEL Dental 3D Printer: Higher, Faster, Easier

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho, https://www.youtube.com/watch?v=RCo92R9M7w4 (showing the resin tray (film assembly) connected to the glass plate (substrate assembly) through the support frame such that the tensioned films are positioned above the substrate and form a solidification interface for the resin during printing).

48.    Shining 3D's infringement includes, without limitation, providing and selling resin trays assemblies, substrate assemblies, and film assemblies that satisfy the structural and functional limitations of at least Claim 1 of the '355 Patent.

49.    Shining 3D's infringement of the '355 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

50.    Shining 3D's acts of infringement have caused and are continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

51.    Since at least receiving notice of the '355 Patent through service of this Complaint, Shining 3D has continued its infringing conduct with knowledge of the '355 Patent.

52.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's direct infringement of the '355 Patent.

**COUNT II**
**(Indirect Infringement of the '355 Patent)**

53.    SprintRay repeats, realleges, and incorporates by reference, the allegations of the preceding paragraphs as if fully set forth herein.

54.    As set forth above, at least upon service of this Complaint, Shining 3D had knowledge of the '355 Patent and of its infringement thereof.

55.    After acquiring knowledge of the '355 Patent, Shining 3D has actively, knowingly, and intentionally induced infringement of the '355 Patent in violation of 35 U.S.C. § 271(b) by, among other things, instructing, encouraging, promoting and directing customers, authorized resellers, distributors, and end users to meet the elements of at least Claim 1 of the '355 Patent.  Such use is

31

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

consistent with how the Accused Products are described to directly infringe the '355 Patent and how they are intended to be used, as described above and incorporated by reference here.

56.    Shining 3D knew or was willfully blind to the fact that it was inducing others, including customers, authorized resellers, distributors, and end users, to infringe the '355 Patent, including at least Claim 1.  Shining 3D's inducement includes, without limitation, providing user manuals and technical documentation; offering training and customer support; publishing instructional videos and online content; promoting and marketing the Accused Products; and instructing customers and resellers how to use the Accused Products in an infringing manner.  *See generally* Exhibit 17 (F1 User Manual) (instructing others how to unpack, install, configure, and use the Accused Products), Exhibit 10 (CEL User Manual) (same), Exhibit 18 (F1 Brochure) (promoting and marketing the Accused Products), Exhibit 19 (CEL Brochure) (same).

Exhibit 20 (https://www.shining3ddental.com/resource-center?search=&type=201389934202) at 1-2 (showing how Shining 3D operates a "Resource Center" providing case studies, webinars, blogs, and events for the Accused Products).

32

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

# Get Started with Dental 3D Printing for Your Clinics

Ready to bring 3D dental model printing into your clinics? You need a reliable partner.

The SHINING 3D DENTAL AccuFab-F1 is a dental 3D printer worth considering. It employs advanced DLP light-curing technology and offers a printing accuracy of ±25μm. It is designed specifically for dental clinics. Features include:

- · **Fast:** A maximum printing speed of 150 mm/h (depending on material and layer), suitable for a wide range of intraoral restorations or models.
- · **Open Material System:** Offers 13 resin options and supports third-party dental resins (subject to validation).
- · **Integrated Workflow:** Compatible with automated integration of cleaning and curing equipment.
- · **User-Friendly:** An intuitive interface that simplifies device setup and operation.

For more detailed information about 3D printing in dental industry, contact SHINING 3D DENTAL now. This may be the key step to gaining a competitive edge and staying ahead of your peers.

*See, e.g.*, Exhibit 21 (https://www.shining3ddental.com/blog/guide-to-buying-3d-dental-printers) at 5 (promoting and marketing the F1 to users, including features such as "advanced DLP light-curing technology," "a printing accuracy of ± 25μm," an "[o]pen [m]aterial [s]ystem," and that it is "designed specifically for dental clinics").

33

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See, e.g.*, Exhibit 19 (CEL Brochure) at 2 (promoting and marketing the CEL to users as a "premium-level printing experience," including features such as improved printing speed and a high-performance light panel).

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (instructing and encouraging use of the F1 to print 3D-objects, including for dental use).



COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (demonstrating and encouraging use of the CEL to print 3D-objects, including for dental use).

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (instructing users how to clean and maintain the HyperClear resin tank to promote its infringing use to print 3D objects).

57.     After having acquired knowledge of the '355 Patent, Shining 3D has also contributorily infringed the '355 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and importing components of the Accused Products that constitute material parts of the claimed inventions, knowing

36

COMPLAINT FOR PATENT INFRINGEMENT                                                CASE NO.: _____

that such components are especially made or adapted for use in infringing the '355 Patent and are not staple articles suitable for substantial non-infringing use.  For example, as discussed above, Shining 3D sells and distributes resin tray assemblies such as Shining 3D's HyperClear and Standard resin trays, components that form part of the assemblies and systems claimed in the Asserted Patents specifically for use with Shining 3D printers.  Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's Standard (FDAC1) and HyperClear (FDAC1 HyperClear) resin tanks); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

58.    These components are not suitable for substantial non-infringing use because they are specifically designed and sold for use as part of the Accused Products.  There is no way to use the Accused Products to 3D print without using the resin tanks provided by Shining 3D, the resin tanks have no purpose other than to be used with the Accused Product to 3D print, and the Accused Products have no purpose other than to 3D print.  Thus, Shining 3D has contributorily infringed by selling and importing these components of the Accused Products that constitute material parts of the claimed inventions, with knowledge that such components are especially made or adapted for use in infringing the '355 Patent and are not staple articles suitable for substantial non-infringing use.

59.    Shining 3D has knowingly and actively aided and abetted, encouraged, and contributed to its customers', resellers', and distributors' direct infringement of the '355 Patent.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products in an infringing manner, providing the Accused Products through which third parties may infringe the '355 Patent, and by advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

60.    Shining 3D's indirect infringement of the '355 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

37

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

61. Shining 3D's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

62. SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's indirect infringement.

## COUNT III
### (Direct Infringement of the '910 Patent)

63. SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

64. Shining 3D has infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '910 Patent in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, selling, and importing into the United States the Accused Products without permission, consent, authorization, or license from SprintRay.

65. By way of example, the Accused Products meet each and every limitation of at least Claim 1 of the '910 Patent. Claim 1 recites the following limitations:

A multi-layer system for making a three-dimensional object by solidifying a solidifiable material, comprising:

a rigid or semi-rigid solidification substrate assembly comprising a frame and a rigid or semi-rigid translucent solidification substrate disposed in the frame, wherein the rigid or semi-rigid translucent solidification substrate comprises a first surface and a second surface opposite the first surface;

a film assembly including at least one film frame and at least one film disposed in the at least one film frame, wherein the at least one film comprises a first surface and a second surface opposite the first surface of the at least one film, wherein the first surface of the at least one film is adjacent to and in non-adhesive contact with the first surface of the rigid or semi-rigid translucent solidification substrate.

66. The Accused Products include the F1 and CEL with HyperClear or Standard resin trays, which together comprise a multi-layer assembly for making a 3D object by solidifying a solidifiable material, including resin, as claimed in the '910 Patent. The Accused Products include a rigid or semi-rigid solidification substrate assembly comprising a support frame mounted to the base of the printer,

38

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

on which a rigid or semi-rigid translucent substrate (i.e., a glass plate and protective film/screen protector) is positioned and secured.



AccuFab-F1 | High-Performance Dental 3D Printing Redefined



Platform Levelling for AccuFab-CEL

39

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8, https://www.youtube.com/watch?v=lxYOzkUHPQY (showing the Accused Products' support frame on which the glass plate and protective film/screen protector, the rigid or semi-rigid translucent substrate, is positioned and secured).

67.     The rigid or semi-rigid translucent substrate (i.e., glass plate and protective film/screen protector) of the Accused Products comprises a first surface, a protective film or screen protector, and a second surface, the glass surface, opposite the protective film disposed within the frame.



Exhibit 17 (F1 User Manual) at 40-41 (showing how the glass plate comprises multiple surfaces: a top surface, which is the second surface, underneath, or opposite, the protective film, which is the first surface).

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____




Exhibit 10 (CEL User Manual) at 12 (showing how the glass plate comprises multiple surfaces: a top surface, which is the second surface, underneath, or opposite, the screen protector, which is the first surface).

68. The Accused Products further include a resin tank comprising a film assembly that is mounted to the support frame and disposed above the substrate. The film assembly includes a film frame and at least one film disposed within the frame, including a permeable release film (in the case of the Standard and HyperClear tanks) and, additionally, a lower scattering film (in the case of HyperClear).



Film Changing for Standard Resin Tank For AccuFab-CEL

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=o1huQoPjg1w, https://www.youtube.com/watch?v=9Id-5AMVhG8 (showing how, in the case of the Standard resin tanks, the film assembly includes at least one frame and a film, the permeable release film, disposed in the frame).

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (showing the HyperClear resin tank which is the film assembly including a frame, a top, permeable release film and a lower scattering film with four holes, allowing air into the gap between the two films, tensioned across the bottom of the resin tank).

69.    In the case of the Standard resin tanks, the single permeable release film is at least one film disposed in the frame comprising a first surface, the bottom surface of the permeable release film, and a second surface above, or opposite, the first surface of the permeable release film—the top of the permeable release film.  The bottom of the permeable release film is in non-adhesive contact with the first surface of the rigid or semi-rigid translucent solidification substrate, which is the screen protective film/screen protector.

70.    In the case of the HyperClear resin tank, the lower scattering film is at least one film disposed in the frame comprising a first surface, the bottom surface of the lower scattering film, and a second surface above, or opposite, the first surface of the lower scattering film—the top of the lower scattering film.  The bottom of the lower scattering film is in non-adhesive contact with the first

43

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

surface of the rigid or semi-rigid translucent solidification substrate, which is the screen protective film/screen protector.



AccuFab-F1 | High-Performance Dental 3D Printing Redefined



AccuFab-F1 | High-Performance Dental 3D Printing Redefined

44

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



Film top
(second surface)

Standard Resin Tank/ Film Changing

**Film Changing for Standard Resin Tank For AccuFab-CEL**



Film bottom
(first surface)

Standard Resin Tank/ Film Changing

**Film Changing for Standard Resin Tank For AccuFab-CEL**

*See* https://www.youtube.com/watch?v=o1huQoPjg1w (showing how, in the case of the Standard resin tanks, the bottom surface of the permeable release film, the first surface of the film, is opposite the top of the permeable release film, which is the second surface of the film, and is disposed in the frame).

45

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



Demonstrative illustration created to show how, in the case of HyperClear, the bottom surface of the lower scattering film of the Accused Products is disposed in the frame and opposite the top of the lower scattering film, which is the second surface of the film, and that the bottom of the lower scattering film is in non-adhesive contact with the first surface of the rigid or semi-rigid translucent solidification substrate, which is the screen protective film.

46

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



**AccuFab-F1 | Advanced Functions for High-Precision Dental 3D Printing**

 

SHINING3D Dental
9.4K subscribers

Subscribe

👍 20   👎   ↪ Share   ✦ Ask   🔖 Save   ⋯



**Platform Levelling for AccuFab-CEL**

47

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=Hw8SiVKGtHY, https://www.youtube.com/watch?v=lxYOzkUHPQY (showing how, in the Accused Products, the film assembly is connected to the substrate assembly, positioning the films above the substrate and forming a non-adhesive contact between the screen protective film/screen protector and the bottom surface of the bottom-most layer of a resin tank).

71.    In the Accused Products, the film assembly is connected to the substrate assembly forming a multi-layer assembly for making a three-dimensional object by solidifying a solidifiable material.



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**

 SHINING3D Dental    Subscribe
9.4K subscribers

 38     Share     Save    ...

COMPLAINT FOR PATENT INFRINGEMENT                                CASE NO.: _____



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**



**AccuFab-F1 | High-Performance Dental 3D Printing Redefined**

 SHINING3D Dental    Subscribe
9.4K subscribers

 38        Share    Save    ...

49

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



**The AccuFab-CEL Dental 3D Printer: Higher, Faster, Easier**



**The AccuFab-CEL Dental 3D Printer: Higher, Faster, Easier**

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



**45 Minutes Tilted Printing**
(depend on different layer thickness and resin tank using)

**The AccuFab-CEL Dental 3D Printer: Higher, Faster, Easier**

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho,

https://www.youtube.com/watch?v=RCo92R9M7w4 (showing the resin tray (film assembly)

connected to the substrate assembly (glass plate and screen protective film) such that the tensioned

films are positioned above the substrate and form a multi-layer assembly solidifying a solidifiable

material).

72.    Shining 3D's infringement includes, without limitation, providing and selling resin trays

assemblies, substrate assemblies, and film assemblies that satisfy the structural and functional

limitations of at least Claim 1 of the '910 Patent.

73.    Shining 3D's infringement of the '910 Patent has injured and continues to injure

SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

74.    Shining 3D's acts of infringement have caused and are continuing to cause damage and

irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury

unless and until such infringement is enjoined by this Court.

75.    Since at least receiving notice of the '910 Patent through service of this Complaint,

Shining 3D has continued its infringing conduct with knowledge of the '910 Patent.

51

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

76.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's direct infringement of the '910 Patent.

## COUNT IV
### (Indirect Infringement of the '910 Patent)

77.    SprintRay repeats, realleges, and incorporates by reference, the allegations of the preceding paragraphs as if fully set forth herein.

78.    As set forth above, at least upon service of this Complaint, Shining 3D had knowledge of the '910 Patent and of its infringement thereof.

79.    After acquiring knowledge of the '910 Patent, Shining 3D has actively, knowingly, and intentionally induced infringement of the '910 Patent in violation of 35 U.S.C. § 271(b) by, among other things, instructing, encouraging, promoting and directing customers, authorized resellers, distributors, and end users to meet the elements of at least Claim 1 of the '910 Patent.  Such use is consistent with how the Accused Products are described to directly infringe the '910 Patent and how they are intended to be used, as described above and incorporated by reference here.

80.    Shining 3D knew or was willfully blind to the fact that it was inducing others, including customers, authorized resellers, distributors, and end users, to infringe the '910 Patent, including at least Claim 1.  Shining 3D's inducement includes, without limitation, providing user manuals and technical documentation; offering training and customer support; publishing instructional videos and online content; promoting and marketing the Accused Products; and instructing customers and resellers how to use the Accused Products in an infringing manner.  *See generally* Exhibit 17 (F1 User Manual) (instructing others how to unpack, install, configure, and use the Accused Products), Exhibit 10 (CEL User Manual) (same), Exhibit 18 (F1 Brochure) (promoting and marketing the Accused Products), Exhibit 19 (CEL Brochure) (same).

52

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

Exhibit 20 (https://www.shining3ddental.com/resource-center?search=&type=201389934202) at 1-2 (showing how Shining 3D operates a "Resource Center" providing case studies, webinars, blogs, and events for the Accused Products).

## Get Started with Dental 3D Printing for Your Clinics

Ready to bring 3D dental model printing into your clinics? You need a reliable partner.

The SHINING 3D DENTAL AccuFab-F1 is a dental 3D printer worth considering. It employs advanced DLP light-curing technology and offers a printing accuracy of ±25µm. It is designed specifically for dental clinics. Features include:

- · **Fast:** A maximum printing speed of 150 mm/h (depending on material and layer), suitable for a wide range of intraoral restorations or models.
- · **Open Material System:** Offers 13 resin options and supports third-party dental resins (subject to validation).
- · **Integrated Workflow:** Compatible with automated integration of cleaning and curing equipment.
- · **User-Friendly:** An intuitive interface that simplifies device setup and operation.

For more detailed information about 3D printing in dental industry, contact SHINING 3D DENTAL now. This may be the key step to gaining a competitive edge and staying ahead of your peers.

*See, e.g.*, Exhibit 21 (https://www.shining3ddental.com/blog/guide-to-buying-3d-dental-printers) at 5 (promoting and marketing the F1 to users, including features such as "advanced DLP light-curing technology," "a printing accuracy of ± 25µm," an "[o]pen [m]aterial [s]ystem," and that it is "designed specifically for dental clinics").

53

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See, e.g.*, Exhibit 19 (CEL Brochure) at 2 (promoting and marketing the CEL to users as a "premium-level printing experience," including features such as improved printing speed and a high-performance light panel).

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (instructing and encouraging use of the F1 to print 3D-objects, including for dental use).



COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (demonstrating and encouraging use of the CEL to print 3D-objects, including for dental use).

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (instructing users how to clean and maintain the HyperClear resin tank to promote its infringing use to print 3D objects).

81.    After having acquired knowledge of the '910 Patent, Shining 3D has also contributorily infringed the '910 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and importing components of the Accused Products that constitute material parts of the claimed inventions, knowing

56

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

that such components are especially made or adapted for use in infringing the '910 Patent and are not staple articles suitable for substantial non-infringing use. For example, as discussed above, Shining 3D sells and distributes resin tray assemblies such as Shining 3D's HyperClear and Standard resin trays, components that form part of the assemblies and systems claimed in the Asserted Patents specifically for use with Shining 3D printers. Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's Standard (FDAC1) and HyperClear (FDAC1 HyperClear) resin tanks); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

82.    These components are not suitable for substantial non-infringing use because they are specifically designed and sold for use as part of the Accused Products. There is no way to use the Accused Products to 3D print without using the resin tanks provided by Shining 3D, the resin tanks have no purpose other than to be used with the Accused Product to 3D print, and the Accused Products have no purpose other than to 3D print. Thus, Shining 3D has contributorily infringed by selling and importing these components of the Accused Products that constitute material parts of the claimed inventions, with knowledge that such components are especially made or adapted for use in infringing the '910 Patent and are not staple articles suitable for substantial non-infringing use.

83.    Shining 3D has knowingly and actively aided and abetted, encouraged, and contributed to its customers', resellers', and distributors' direct infringement of the '910 Patent. Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products in an infringing manner, providing the Accused Products through which third parties may infringe the '910 Patent, and by advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

84.    Shining 3D's indirect infringement of the '910 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

57

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.: _____

85.    Shining 3D's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

86.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's indirect infringement.

## COUNT V
### (Direct Infringement of the '555 Patent)

87.    SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

88.    Shining 3D has infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '555 Patent in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, selling, and importing into the United States the Accused Products without permission, consent, authorization, or license from SprintRay.

89.    By way of example, the Accused Products meet each and every limitation of at least Claim 1 of the '555 Patent. Claim 1 recites the following limitations:

A substrate assembly for use with a three-dimensional printer reservoir, the reservoir including a frame defining a cavity adapted to be at least partially filled with a photosensitive liquid, the substrate assembly comprising:

a first layer comprising a permeable film adapted to be configured with a lower portion of the cavity and to hold the photosensitive liquid within the cavity;

a second layer configured below the first layer; and

a third layer comprising a permeable substrate disposed between the first layer and the second layer.

90.    The Accused Products include a substrate assembly for use with a 3D printer reservoir. They further include a resin tank comprising a rigid frame that defines a cavity adapted to be at least partially filled with photosensitive resin during printing.

58

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



Cavity partially filled with photosensitive liquid

Frame

Printing Removable Denture with AccuFab F1

SHINING3D Dental
9.4K subscribers

Subscribe

37  Share  Save  ...

Cavity partially filled with photosensitive liquid

Frame

**Accufab Cel**

59

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc, https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing liquid photopolymer resin being poured into the cavity of the resin tanks of the Accused Products).

91.     The substrate assembly includes a first layer comprising a permeable film configured to form a lower portion of the cavity and to hold resin within the reservoir.

First layer of permeable film






Printing Removable Denture with AccuFab F1

SHINING3D Dental
9.4K subscribers     **Subscribe**

△ 37     ⫶     ↪ Share     ⬚ Save     ···

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



First layer of permeable film

**Accufab Cel**

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc,
https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing the first layer of permeable film in the resin tank forming a lower portion of the cavity and holding resin).

92.    The substrate assembly also includes a second layer disposed below the first layer.

61

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



Platform Levelling for AccuFab-CEL

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8,

https://www.youtube.com/watch?v=lxYOzkUHPQY (showing the glass plate, which is the second layer supporting the film layers, positioned beneath the resin tank).

93.    The substrate assembly further includes a third layer comprising a transparent permeable substrate disposed between the first and second layers, permitting transmission of curing light, such as the scattering film in the HyperClear and similar resin trays.



*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (showing the HyperClear resin tank includes the third layer, a lower scattering film with four holes, allowing air into the gap between the two films, which would be disposed between the first and second layers).

94.    Shining 3D's infringement of the '555 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

95.    Shining 3D's acts of infringement have caused and are continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

63

COMPLAINT FOR PATENT
INFRINGEMENT                                                    CASE NO.: _____

96. Since at least receiving notice of the '555 Patent through service of this Complaint, Shining 3D has continued its infringing conduct with knowledge of the '555 Patent.

97. SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's direct infringement of the '555 Patent.

<u>**COUNT VI**</u>
**(Indirect Infringement of the '555 Patent)**

98. SprintRay repeats, realleges, and incorporates by reference, the allegations of the preceding paragraphs as if fully set forth herein.

99. As set forth above, at least upon service of this Complaint, Shining 3D had knowledge of the '555 Patent and of its infringement thereof.

100. After acquiring knowledge of the '555 Patent, Shining 3D has actively, knowingly, and intentionally induced infringement of the '555 Patent in violation of 35 U.S.C. § 271(b) by, among other things, instructing, encouraging, promoting and directing customers, authorized resellers, distributors, and end users to meet the elements of at least Claim 1 of the '555 Patent.  Such use is consistent with how the Accused Products are described to directly infringe the '555 Patent and how they are intended to be used, as described above and incorporated by reference here.

101. Shining 3D knew or was willfully blind to the fact that it was inducing others, including customers, authorized resellers, distributors, and end users, to infringe the '555 Patent, including at least Claim 1.  Shining 3D's inducement includes, without limitation, providing user manuals and technical documentation; offering training and customer support; publishing instructional videos and online content; promoting and marketing the Accused Products; and instructing customers and resellers how to use the Accused Products in an infringing manner.  *See generally* Exhibit 17 (F1 User Manual) (instructing others how to unpack, install, configure, and use the Accused Products), Exhibit 10 (CEL User Manual) (same), Exhibit 18 (F1 Brochure) (promoting and marketing the Accused Products), Exhibit 19 (CEL Brochure) (same).

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

Exhibit 20 (https://www.shining3ddental.com/resource-center?search=&type=201389934202) at 1-2 (showing how Shining 3D operates a "Resource Center" providing case studies, webinars, blogs, and events for the Accused Products).

*See, e.g.*, Exhibit 21 (https://www.shining3ddental.com/blog/guide-to-buying-3d-dental-printers) at 5 (promoting and marketing the F1 to users, including features such as "advanced DLP light-curing technology," "a printing accuracy of ± 25μm," an "[o]pen [m]aterial [s]ystem," and that it is "designed specifically for dental clinics").

65

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



*See, e.g.*, Exhibit 19 (CEL Brochure) at 2 (promoting and marketing the CEL to users as a "premium-level printing experience," including features such as improved printing speed and a high-performance light panel).

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (instructing and encouraging use of the F1 to print 3D-objects, including for dental use).



67

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (demonstrating and encouraging use of the CEL to print 3D-objects, including for dental use).

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (instructing users how to clean and maintain the HyperClear resin tank to promote its infringing use to print 3D objects).

102.    After having acquired knowledge of the '555 Patent, Shining 3D has also contributorily infringed the '555 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and importing components of the Accused Products that constitute material parts of the claimed inventions, knowing

68

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

that such components are especially made or adapted for use in infringing the '555 Patent and are not staple articles suitable for substantial non-infringing use.  For example, as discussed above, Shining 3D sells and distributes resin tray assemblies such as Shining 3D's HyperClear and Standard resin trays, components that form part of the assemblies and systems claimed in the Asserted Patents specifically for use with Shining 3D printers.  Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's Standard (FDAC1) and HyperClear (FDAC1 HyperClear) resin tanks); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

103.    These components are not suitable for substantial non-infringing use because they are specifically designed and sold for use as part of the Accused Products.  There is no way to use the Accused Products to 3D print without using the resin tanks provided by Shining 3D, the resin tanks have no purpose other than to be used with the Accused Product to 3D print, and the Accused Products have no purpose other than to 3D print.  Thus, Shining 3D has contributorily infringed by selling and importing these components of the Accused Products that constitute material parts of the claimed inventions, with knowledge that such components are especially made or adapted for use in infringing the '555 Patent and are not staple articles suitable for substantial non-infringing use.

104.    Shining 3D has knowingly and actively aided and abetted, encouraged, and contributed to its customers', resellers', and distributors' direct infringement of the '555 Patent.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products in an infringing manner, providing the Accused Products through which third parties may infringe the '555 Patent, and by advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

105.    Shining 3D's indirect infringement of the '555 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

106.   Shining 3D's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court. SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's indirect infringement.

## COUNT VII
### (Direct Infringement of the '588 Patent)

107.   SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

108.   Shining 3D has infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '588 Patent in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, selling, and importing into the United States the Accused Products without permission, consent, authorization, or license from SprintRay.

109.   By way of example, the Accused Products meet each and every limitation of at least Claim 1 of the '588 Patent.  Claim 1 recites the following limitations:

> A substrate assembly for use with a three-dimensional printer reservoir, the reservoir including a frame defining a cavity adapted to be at least partially filled with a photosensitive liquid, the substrate assembly comprising:

> a first layer comprising a film adapted to be configured with a lower portion of the cavity and to hold the photosensitive liquid within the cavity above a projection lens of a stereolithography projector configured below the film;

> a second layer configured below the first layer; and

> a third layer comprising a semi-transparent substrate adapted to enhance a surface finish of a 3D-printed object held detachedly between the first layer and the second layer.

110.   The Accused Products include the F1 and CEL with HyperClear resin trays, each of which includes a resin tank or reservoir assembly comprising a frame that defines a cavity adapted to be at least partially filled with photosensitive resin during printing.

70

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



Cavity filled with photosensitive liquid

Frame

Printing Removable Denture with AccuFab F1

SHINING3D Dental
9.4K subscribers

Subscribe

37    Share    Save



Cavity filled with photosensitive liquid

Frame

**Accufab Cel**

71

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc, https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing liquid photopolymer resin being poured into the cavity of a resin tank of the Accused Products).

111.    The Accused Products further include a first layer comprising a film positioned at a lower portion of the reservoir cavity that retains the photosensitive liquid, including a permeable release film that holds the resin within the cavity while permitting exposure to light from a projection system positioned below the film.



First layer

FDAC1-BE007A02

**Printing Removable Denture with AccuFab F1**

SHINING3D Dental
9.4K subscribers    Subscribe

 37     Share    Save    ...

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____



First layer

**Accufab Cel**

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc,
https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing the first layer of permeable film in the resin tank forming a lower portion of the cavity and holding resin).

73

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____





*See* https://www.youtube.com/watch?v=9Id-5AMVhG8 (showing how the DLP light engine, a projection system, is positioned below the entire substrate assembly, including the first layer).

74

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

Exhibit 10 (CEL User Manual) at 19 (showing the LED/LCD light system, a projection system, is positioned below the entire substrate assembly, including the first layer).

112.    The Accused Products also include a second layer configured below the first layer, including a substrate positioned beneath the film, such as a glass or similar support structure forming part of the printing assembly.

75

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



AccuFab-F1 | High-Performance Dental 3D Printing Redefined



**Platform Levelling for AccuFab-CEL**

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8,

https://www.youtube.com/watch?v=lxYOzkUHPQY (showing the glass plate positioned beneath the build tray, which is the second layer supporting the film and forming part of the printing assembly).

76

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

113.    The Accused Products further include a third, semi-transparent layer configured to diffuse light and enhance surface finish, such as the scattering film used in HyperClear and similar resin trays.



*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (showing the HyperClear resin tank includes the third layer, a lower scattering film with four holes, allowing air into the gap between the two films, which would be disposed between the first and second layers).

77

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



Exhibit 22 (https://www.linkedin.com/posts/shining3d-dental_shining3ddental-accufabf1-3dprinter-activity-7403078789003735040-kFZQ?utm_source=share&utm_medium=member_desktop&rcm=ACoAACjicRYBBlOwQrXH33inC3-jKqJaIispTE4) at 1 (showing how the Accused Products, using the HyperClear resin tank, enhance the surface finish of 3D printed objects); Exhibit 23 (https://www.linkedin.com/posts/shining3d-dental_shining3ddental-digitaldentistry-chairsidedentistry-activity-7423365148926672896-Z4J8?utm_source=share&utm_medium=member_desktop&rcm=ACoAACjicRYBBlOwQrXH33inC3-jKqJaIispTE4) at 1-2 (same).

78

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

114.    Shining 3D's infringement of the '588 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

115.    Shining 3D's acts of infringement have caused and are continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

116.    Since at least receiving notice of the '588 Patent through service of this Complaint, Shining 3D has continued its infringing conduct with knowledge of the '588 Patent.

117.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's direct infringement of the '588 Patent.

**COUNT VIII**
**(Indirect Infringement of the '588 Patent)**

118.    SprintRay repeats, realleges, and incorporates by reference, the allegations of the preceding paragraphs as if fully set forth herein.

119.    As set forth above, at least upon service of this Complaint, Shining 3D had knowledge of the '588 Patent and of its infringement thereof.

120.    After acquiring knowledge of the '588 Patent, Shining 3D has actively, knowingly, and intentionally induced infringement of the '588 Patent in violation of 35 U.S.C. § 271(b) by, among other things, instructing, encouraging, promoting and directing customers, authorized resellers, distributors, and end users to meet the elements of at least Claim 1 of the '588 Patent.  Such use is consistent with how the Accused Products are described to directly infringe the '588 Patent and how they are intended to be used, as described above and incorporated by reference here.

121.    Shining 3D knew or was willfully blind to the fact that it was inducing others, including customers, authorized resellers, distributors, and end users, to infringe the '588 Patent, including at least Claim 1.  Shining 3D's inducement includes, without limitation, providing user manuals and technical documentation; offering training and customer support; publishing instructional videos and online content; promoting and marketing the Accused Products; and instructing customers and resellers how to use the Accused Products in an infringing manner.  *See generally* Exhibit 17 (F1 User Manual) (instructing others how to unpack, install, configure, and use the Accused Products), Exhibit 10 (CEL

79

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

User Manual) (same), Exhibit 18 (F1 Brochure) (promoting and marketing the Accused Products), Exhibit 19 (CEL Brochure) (same).

Exhibit 20 (https://www.shining3ddental.com/resource-center?search=&type=201389934202) at 1-2 (showing how Shining 3D operates a "Resource Center" providing case studies, webinars, blogs, and events for the Accused Products).

# Get Started with Dental 3D Printing for Your Clinics

Ready to bring 3D dental model printing into your clinics? You need a reliable partner.

The SHINING 3D DENTAL AccuFab-F1 is a dental 3D printer worth considering. It employs advanced DLP light-curing technology and offers a printing accuracy of ±25μm. It is designed specifically for dental clinics. Features include:

- · **Fast:** A maximum printing speed of 150 mm/h (depending on material and layer), suitable for a wide range of intraoral restorations or models.
- · **Open Material System:** Offers 13 resin options and supports third-party dental resins (subject to validation).
- · **Integrated Workflow:** Compatible with automated integration of cleaning and curing equipment.
- · **User-Friendly:** An intuitive interface that simplifies device setup and operation.

For more detailed information about 3D printing in dental industry, contact SHINING 3D DENTAL now. This may be the key step to gaining a competitive edge and staying ahead of your peers.

*See, e.g.*, Exhibit 21 (https://www.shining3ddental.com/blog/guide-to-buying-3d-dental-printers) at 5 (promoting and marketing the F1 to users, including features such as "advanced DLP light-curing

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

technology," "a printing accuracy of ± 25μm," an "[o]pen [m]aterial [s]ystem," and that it is "designed specifically for dental clinics").



*See, e.g.*, Exhibit 19 (CEL Brochure) at 2 (promoting and marketing the CEL to users as a "premium-level printing experience," including features such as improved printing speed and a high-performance light panel).

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (instructing and encouraging use of the F1 to print 3D-objects, including for dental use).



COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (demonstrating and encouraging use of the CEL to print 3D-objects, including for dental use).

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (instructing users how to clean and maintain the HyperClear resin tank to promote its infringing use to print 3D objects).

122.    After having acquired knowledge of the '588 Patent, Shining 3D has also contributorily infringed the '588 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and importing components of the Accused Products that constitute material parts of the claimed inventions, knowing

83

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

that such components are especially made or adapted for use in infringing the '588 Patent and are not staple articles suitable for substantial non-infringing use.  For example, as discussed above, Shining 3D sells and distributes resin tray assemblies such as Shining 3D's HyperClear resin trays, components that form part of the assemblies and systems claimed in the Asserted Patents specifically for use with Shining 3D printers.  Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's Standard (FDAC1) and HyperClear (FDAC1 HyperClear) resin tanks); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

123.    These components are not suitable for substantial non-infringing use because they are specifically designed and sold for use as part of the Accused Products.  There is no way to use the Accused Products to 3D print without using the resin tanks provided by Shining 3D, the resin tanks have no purpose other than to be used with the Accused Product to 3D print, and the Accused Products have no purpose other than to 3D print.  Thus, Shining 3D has contributorily infringed by selling and importing these components of the Accused Products that constitute material parts of the claimed inventions, with knowledge that such components are especially made or adapted for use in infringing the '588 Patent and are not staple articles suitable for substantial non-infringing use.

124.    Shining 3D has knowingly and actively aided and abetted, encouraged, and contributed to its customers', resellers', and distributors' direct infringement of the '588 Patent.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products in an infringing manner, providing the Accused Products through which third parties may infringe the '588 Patent, and by advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

125.    Shining 3D's indirect infringement of the '588 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

84

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

126. Shining 3D's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

127. SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's indirect infringement.

## COUNT IX
### (Direct Infringement of the '180 Patent)

128. SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

129. Shining 3D has infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '180 Patent in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, selling, and importing into the United States the Accused Products without permission, consent, authorization, or license from SprintRay.

130. By way of example, the Accused Products meet each and every limitation of at least Claim 1 of the '180 Patent. Claim 1 recites the following limitations:

A reservoir assembly for use with a three-dimensional (3D) printer for printing a 3D object, comprising:

a frame defining a cavity adapted to be at least partially filled with a photosensitive liquid;

a first layer comprising a film adapted to be configured with a lower portion of the cavity to hold the photosensitive liquid within the cavity, and adapted to align with a second layer configured below the first layer, the second layer optionally external to or integral with the reservoir assembly; and

a third layer comprising a semi-transparent substrate adapted to enhance a surface finish of a 3D-printed object held without an adhesive between the first layer and the second layer.

131. The Accused Products include the F1 and CEL with HyperClear resin trays, each of which includes a reservoir assembly in which a resin tank defines a cavity configured to hold liquid photopolymer resin during printing.

85

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____





COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc, https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing liquid photopolymer resin being poured into the cavity of a resin tank of a build tray).

132.    The Accused Products further include a first layer comprising a film positioned to form a lower portion of the cavity and to retain the photosensitive liquid, such as the permeable release film used in the resin tank.



First layer

FDAC1-BE007A02

**Printing Removable Denture with AccuFab F1**

SHINING3D Dental
9.4K subscribers    Subscribe

37    Share    Save

87



**Accufab Cel**

*See* https://www.youtube.com/watch?v=XSVhYLMv1zc,

https://www.youtube.com/watch?v=0fkSqgVmHIQ (showing the first layer of permeable release film in the resin tank forming a lower portion of the cavity and holding resin).

133.    The Accused Products also include a second layer configured below the first layer, including a substrate or support structure positioned beneath the film.

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____



**Platform Levelling for AccuFab-CEL**

*See* https://www.youtube.com/watch?v=9Id-5AMVhG8,

https://www.youtube.com/watch?v=lxYOzkUHPQY (showing the glass plate positioned beneath the build tray, which is the second layer supporting the film and forming part of the reservoir assembly).

89

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.: _____

134.     In addition, the Accused Products include a third layer comprising a semi-transparent substrate disposed between the first and second layers configured to diffuse light and enhance the surface finish of printed objects, such as the diffusing film used in HyperClear and similar resin trays.



*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (showing the HyperClear resin tank includes the third layer, a lower scattering film with four holes, allowing air into the gap between the two films, which would be disposed between the first and second layers).

COMPLAINT FOR PATENT                                          CASE NO.: _____
INFRINGEMENT



Exhibit 22 (https://www.linkedin.com/posts/shining3d-dental_shining3ddental-accufabf1-3dprinter-activity-7403078789003735040-kFZQ?utm_source=share&utm_medium=member_desktop&rcm=ACoAACjicRYBBlOwQrXH33inC3-jKqJaIispTE4) at 1 (showing how the Accused Products, using the HyperClear resin tank, enhance the surface finish of 3D printed objects); Exhibit 23 (https://www.linkedin.com/posts/shining3d-dental_shining3ddental-digitaldentistry-chairsidedentistry-activity-7423365148926672896-Z4J8?utm_source=share&utm_medium=member_desktop&rcm=ACoAACjicRYBBlOwQrXH33inC3-jKqJaIispTE4) at 1-2 (same).

| COMPLAINT FOR PATENT INFRINGEMENT | CASE NO.: _____ |
|---|---|

135.    Shining 3D's infringement of the '180 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

136.    Shining 3D's acts of infringement have caused and are continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

137.    Since at least receiving notice of the '180 Patent through service of this Complaint, Shining 3D has continued its infringing conduct with knowledge of the '180 Patent.

138.     SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's direct infringement of the '180 Patent.

## COUNT X
### (Indirect Infringement of the '180 Patent)

139.    SprintRay repeats, realleges, and incorporates by reference, the allegations of the preceding paragraphs as if fully set forth herein.

140.    As set forth above, at least upon service of this Complaint, Shining 3D had knowledge of the '180 Patent and of its infringement thereof.

141.    After acquiring knowledge of the '180 Patent, Shining 3D has actively, knowingly, and intentionally induced infringement of the '180 Patent in violation of 35 U.S.C. § 271(b) by, among other things, instructing, encouraging, promoting and directing customers, authorized resellers, distributors, and end users to meet the elements of at least Claim 1 of the '180 Patent.  Such use is consistent with how the Accused Products are described to directly infringe the '180 Patent and how they are intended to be used, as described above and incorporated by reference here.

142.    Shining 3D knew or was willfully blind to the fact that it was inducing others, including customers, authorized resellers, distributors, and end users, to infringe the '180 Patent, including at least Claim 1.  Shining 3D's inducement includes, without limitation, providing user manuals and technical documentation; offering training and customer support; publishing instructional videos and online content; promoting and marketing the Accused Products; and instructing customers and resellers how to use the Accused Products in an infringing manner.  *See generally* Exhibit 17 (F1 User Manual) (instructing others how to unpack, install, configure, and use the Accused Products), Exhibit 10 (CEL

92

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

User Manual) (same), Exhibit 18 (F1 Brochure) (promoting and marketing the Accused Products), Exhibit 19 (CEL Brochure) (same).

Exhibit 20 (https://www.shining3ddental.com/resource-center?search=&type=201389934202) at 1-2 (showing how Shining 3D operates a "Resource Center" providing case studies, webinars, blogs, and events for the Accused Products).

# Get Started with Dental 3D Printing for Your Clinics

Ready to bring 3D dental model printing into your clinics? You need a reliable partner.

The SHINING 3D DENTAL AccuFab-F1 is a dental 3D printer worth considering. It employs advanced DLP light-curing technology and offers a printing accuracy of ±25µm. It is designed specifically for dental clinics. Features include:

- · **Fast:** A maximum printing speed of 150 mm/h (depending on material and layer), suitable for a wide range of intraoral restorations or models.
- · **Open Material System:** Offers 13 resin options and supports third-party dental resins (subject to validation).
- · **Integrated Workflow:** Compatible with automated integration of cleaning and curing equipment.
- · **User-Friendly:** An intuitive interface that simplifies device setup and operation.

For more detailed information about 3D printing in dental industry, contact SHINING 3D DENTAL now. This may be the key step to gaining a competitive edge and staying ahead of your peers.

*See, e.g.*, Exhibit 21 (https://www.shining3ddental.com/blog/guide-to-buying-3d-dental-printers) at 5 (promoting and marketing the F1 to users, including features such as "advanced DLP light-curing

COMPLAINT FOR PATENT INFRINGEMENT                                                    CASE NO.: _____

technology," "a printing accuracy of ± 25µm," an "[o]pen [m]aterial [s]ystem," and that it is "designed specifically for dental clinics").



*See, e.g.*, Exhibit 19 (CEL Brochure) at 2 (promoting and marketing the CEL to users as a "premium-level printing experience," including features such as improved printing speed and a high-performance light panel).

94

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (instructing and encouraging use of the F1 to print 3D-objects, including for dental use).



COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____



*See* https://www.youtube.com/watch?v=XSVhYLMv1zc (demonstrating and encouraging use of the CEL to print 3D-objects, including for dental use).

*See* https://www.youtube.com/watch?v=v5CNmM-d8Ho (instructing users how to clean and maintain the HyperClear resin tank to promote its infringing use to print 3D objects).

143.    After having acquired knowledge of the '180 Patent, Shining 3D has also contributorily infringed the '180 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and importing components of the Accused Products that constitute material parts of the claimed inventions, knowing

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

that such components are especially made or adapted for use in infringing the '180 Patent and are not staple articles suitable for substantial non-infringing use.  For example, as discussed above, Shining 3D sells and distributes resin tray assemblies such as Shining 3D's HyperClear resin trays, components that form part of the assemblies and systems claimed in the Asserted Patents specifically for use with Shining 3D printers.  Exhibit 13 (https://support.shining3ddental.com/en/support/solutions/articles/60001569623-resin-tank-versions-for-accufab-f1) at 1-2 (showing Shining 3D's Standard (FDAC1) and HyperClear (FDAC1 HyperClear) resin tanks); https://www.youtube.com/watch?v=o1huQoPjg1w (showing the CEL's standard resin tank); Exhibit 9 (https://www.shining3ddental.com/solution/accufab-cel) at 7 (showing that "the CEL supports a Hyper Clear resin tank").

144.    These components are not suitable for substantial non-infringing use because they are specifically designed and sold for use as part of the Accused Products.  There is no way to use the Accused Products to 3D print without using the resin tanks provided by Shining 3D, the resin tanks have no purpose other than to be used with the Accused Product to 3D print, and the Accused Products have no purpose other than to 3D print.  Thus, Shining 3D has contributorily infringed by selling and importing these components of the Accused Products that constitute material parts of the claimed inventions, with knowledge that such components are especially made or adapted for use in infringing the '180 Patent and are not staple articles suitable for substantial non-infringing use.

145.    Shining 3D has knowingly and actively aided and abetted, encouraged, and contributed to its customers', resellers', and distributors' direct infringement of the '180 Patent.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products in an infringing manner, providing the Accused Products through which third parties may infringe the '180 Patent, and by advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

146.    Shining 3D's indirect infringement of the '180 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

97

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

147.    Shining 3D's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

148.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Shining 3D's indirect infringement.

**PRAYER FOR RELIEF**

WHEREFORE, SprintRay prays for judgment and relief as follows:

A.    An entry of judgment holding that Shining 3D has infringed and is infringing each of the Asserted Patents;

B.    An entry of judgment holding that Shining 3D has induced infringement and is inducing infringement of each of the Asserted Patents; and has contributorily infringed and continues to contributorily infringe each of the Asserted Patents;

C.    A preliminary and permanent injunction against Shining 3D and its officers, employees, agents, servants, attorneys, instrumentalities, and those in privity with them, from infringing, inducing, and contributing to the infringement of each of the Asserted Patents and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

D.    An award to SprintRay of such damages as it shall prove at trial against Shining 3D to compensate SprintRay for Shining 3D's infringement of each of the Asserted Patents that will account for infringement up to trial based on the relevant information and financials produced, where said damages will be no less than a reasonable royalty;

E.    An entry of judgement holding that Shining 3D's infringement of each of the Asserted Patents has been willful and deliberate, at least from the filing of this Complaint;

F.    A finding that this case is "exceptional" and an award to SprintRay of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

G.    An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of each of the Asserted Patents; and

H.    Such further and other relief as the Court may deem proper and just.

98

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.: _____

**JURY DEMAND**

SprintRay demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated: June 18, 2026

By: */s/ Christina M. Finn*
Lisa Kobialka (SBN 191404)
lisa.kobialka@hsfkramer.com
Christina M. Finn (SBN 247838)
christina.finn@hsfkramer.com
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel.: (650) 752-1700

Aaron M. Frankel (*pro hac vice* to be filed)
aaron.frankel@hsfkramer.com
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Tel.: (212) 715-9100

*Attorneys for Plaintiff*
SprintRay, Inc.

99

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____